UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

JOSEPH T.,[1]

Plaintiff,

v.

COMMISSIONER OF SOCIAL SECURITY,

Defendant.

6:23-CV-6484-LJV
DECISION & ORDER

On August 23, 2023, the plaintiff, Joseph T. ("Joseph"), brought this action under the Social Security Act ("the Act"). Docket Item 1. He seeks review of the determination by the Commissioner of Social Security ("Commissioner") that he was not disabled.[2] *Id.* On November 22, 2023, Joseph moved for judgment on the pleadings, Docket Item 4; on January 17, 2024, the Commissioner responded and cross-moved for judgment on the pleadings, Docket Item 8; and on January 30, 2024, Joseph replied, Docket Item 9.

[1] To protect the privacy interests of Social Security litigants while maintaining public access to judicial records, this Court will identify any non-government party in cases filed under 42 U.S.C. § 405(g) only by first name and last initial. Standing Order, Identification of Non-Government Parties in Social Security Opinions (W.D.N.Y. Nov. 18, 2020).

[2] Joseph applied for Supplemental Security Income ("SSI"), which is paid to a person with a disability who also demonstrates financial need. 42 U.S.C. § 1382(a).

For the reasons that follow, this Court grants Joseph's motion in part and denies the Commissioner's cross motion.[3]

**STANDARD OF REVIEW**

"The scope of review of a disability determination . . . involves two levels of inquiry." *Johnson v. Bowen*, 817 F.2d 983, 985 (2d Cir. 1987). The court "must first decide whether [the Commissioner] applied the correct legal principles in making the determination." *Id*. This includes ensuring "that the claimant has had a full hearing under the . . . regulations and in accordance with the beneficent purposes of the Social Security Act." *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009) (alterations omitted) (quoting *Cruz v. Sullivan*, 912 F.2d 8, 11 (2d Cir. 1990)). Then, the court "decide[s] whether the determination is supported by 'substantial evidence.'" *Johnson*, 817 F.2d at 985 (quoting 42 U.S.C. § 405(g)).

"Substantial evidence" means "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). "The substantial evidence standard means once an ALJ finds facts, [the court] can reject those facts only if a reasonable fact finder would *have to conclude otherwise*." *Brault v. Soc. Sec. Admin., Comm'r*, 683 F.3d 443, 448 (2d Cir. 2012) (internal quotation marks and citation omitted) (emphasis in original); *see McIntyre v. Colvin*, 758 F.3d 146, 149 (2d Cir. 2014) ("If evidence is susceptible to

[3] This Court assumes familiarity with the underlying facts, the procedural history, and the decision of the Administrative Law Judge ("ALJ") and refers only to the facts necessary to explain its decision.

more than one rational interpretation, the Commissioner's conclusion must be upheld."). But "[w]here there is a reasonable basis for doubt whether the ALJ applied correct legal principles, application of the substantial evidence standard to uphold a finding of no disability creates an unacceptable risk that a claimant will be deprived of the right to have her disability determination made according to the correct legal principles." *Johnson*, 817 F.2d at 986.

## DISCUSSION

### I. THE ALJ'S DECISION

On May 3, 2023, the ALJ found that Joseph had not been under a disability since September 12, 2016, the date his application was filed. *See* Docket Item 3-1 at 390–91. The ALJ's decision was based on the five-step sequential evaluation process under 20 C.F.R. §§ 404.1520(a) and 416.920(a). *See id.* at 365–67.

At step one, the ALJ found that Joseph had not engaged in substantial gainful activity since filing his application. *Id.* at 367. At step two, the ALJ found that Joseph suffered from thirteen severe, medically determinable impairments: "asthma; anxiety; obsessive-compulsive disorder ('OCD'); attention deficit hyperactivity disorder ('ADHD'); substance abuse; cervicalgia; degenerative disc disease; cervical spine disorder; myofascial pain syndrome; knee disorder; knee pain; autism spectrum disorder; and schizoaffective disorder." *Id.*

At step three, the ALJ found that Joseph's severe, medically determinable impairments did not meet or medically equal one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. *See id.* at 368. More specifically, the ALJ found that Joseph's physical impairments did not meet or medically equal listing 1.15 (disorders of

the skeletal spine resulting in compromise of a nerve root), 1.16 (lumbar spinal stenosis resulting in compromise of the cauda equina), 1.18 (abnormality of a major joint in any extremity), or 3.03 (asthma). *Id.* Likewise, the ALJ found that Joseph's mental impairments did not meet or medically equal listing 12.03 (schizophrenia spectrum and other psychotic disorders), 12.06 (anxiety and obsessive-compulsive disorders), 12.10 (autism spectrum disorder), or 12.11 (neurodevelopmental disorders). *Id.* In assessing Joseph's mental impairments, the ALJ found that Joseph was moderately impaired in: (1) understanding, remembering, or applying information; (2) interacting with others; (3) concentrating, persisting, or maintaining pace; and (4) adapting or managing himself. *Id.* at 369–74.

The ALJ then found that Joseph had the residual functional capacity ("RFC")[4] to "perform light work as defined in 20 C[.]F[.]R[. §] 416.967(b)" except that:

> [Joseph] can push/pull as much as he can lift/carry; can never climb ladders, ropes, or scaffolds; can never work at unprotected heights; can occasionally work in humidity and wetness; can occasionally work in dust, odors, fumes, and pulmonary irritants; can never work in extreme cold; can never work in extreme heat; can work in moderate noise; can occasionally reach overhead bilaterally; is limited to performing simple, routine, and repetitive tasks, but not at a production rate pace (e.g., no assembly-line work); is limited to tolerating few changes in a routine work setting, defined as performing the same duties at the same station or location day to day; can have occasional interaction with supervisors; can have occasional contact with co-workers with no tandem tasks or team-type activities; can have no contact with the public; and must have access to a restroom facility, but time off[ ]task can be accommodated by normal breaks.

[4] A claimant's RFC is the most "an individual can still do despite his or her limitations . . . in an ordinary work setting on a regular and continuing basis." SSR 96-8p, 1996 WL 374184, at *2 (July 2, 1996). "A 'regular and continuing basis' means 8 hours a day, for 5 days a week, or an equivalent work schedule." *Id.*; *see Melville v. Apfel*, 198 F.3d 45, 52 (2d Cir. 1999).

*Id.* at 374–75.

At step four, the ALJ found that Joseph had no past relevant work. *Id.* at 389. But given Joseph's age, education, and RFC, the ALJ found at step five that Joseph could perform substantial gainful activity as a marker, collator operator, or router. *Id.* at 389–90; *see Dictionary of Occupational Titles* 209.587-034, 1991 WL 671802 (Jan. 1, 2016); *id.* at 208.685-010, 1991 WL 671753 (Jan. 1, 2016); *id.* at 222.587-038, 1991 WL 672123 (Jan. 1, 2016). The ALJ therefore found that Joseph had not been under a disability since his application was filed. *See* Docket Item 3-1 at 390.

## II. ALLEGATIONS

Joseph argues that the ALJ erred in three ways. *See* Docket Item 4-1 at 19–30. First, Joseph argues that the ALJ failed to account for Joseph's non-severe impairment of irritable bowel syndrome ("IBS"). *Id.* at 19–23. Second, Joseph argues that the ALJ failed to resolve an apparent conflict between the RFC and the Dictionary of Occupational Titles ("DOT"). *Id.* at 23–26. Finally, Joseph argues that the ALJ failed to evaluate whether a closed period of benefits was appropriate. *Id.* at 26–30. This Court agrees that the ALJ erred and, because that error was to Joseph's prejudice, remands the matter to the Commissioner.

## III. ANALYSIS

At step five, the Commissioner considers a claimant's RFC, age, education, and work experience "to see if [a claimant] can make an adjustment to other work." 20 C.F.R. § 416.920(a)(4)(v). In doing so, the Commissioner bears the burden of showing that, given those factors, there are a significant number of jobs in the national economy that a claimant can perform. *See id.* To make that showing, an ALJ may either "apply[]

the Medical Vocational Guidelines" or "adduc[e] the testimony of a vocational expert." *McIntyre v. Colvin*, 758 F.3d 146, 151 (2d Cir. 2014).

If an ALJ chooses to rely on the testimony of a vocational expert ("VE"), the ALJ "must be alert to the possibility of 'apparent unresolved conflict[s]' between th[at] testimony and the [DOT]." *Lockwood v. Comm'r of Soc. Sec. Admin.*, 914 F.3d 87, 91 (2d Cir. 2019) (quoting Social Security Ruling ("SSR") 00-4p, 2000 WL 1898704, at *2). In this regard, an ALJ has an "independent, affirmative obligation . . . to undertake a meaningful investigatory effort to uncover apparent conflicts, beyond merely asking the [VE] if there is one." *Id.* at 94 (internal quotation marks and alterations omitted). "When there is an apparent unresolved conflict between VE . . . evidence and the DOT, the [ALJ] must elicit a reasonable explanation for the conflict before relying on the VE . . . evidence to support a determination or decision about whether the claimant is disabled." SSR 00-4p, 2000 WL 1898704, at *2.[5] And even if the regulations did not explicitly require the ALJ to reconcile such conflicts, it is hard to see how VE testimony that contradicts the DOT is reliable without at least some explanation.

Here, the ALJ found that Joseph could perform light work with a limitation to, among other things, reaching overhead only occasionally. Docket Item 3-1 at 374–75. Given that limitation, Joseph argues that there was an unresolved apparent conflict

[5] This Court is aware that on January 6, 2025, the Social Security Administration issued SSR 24-3p, "rescinding SSR 00-4p and [] no longer requir[ing] adjudicators to identify and resolve conflicts between occupational information provided by [vocational specialists] and [vocational experts] and information in the [DOT]." SSR 24-3p, 2024 WL 5256890, at *2. This regulation does not apply retroactively. *Id.* at n.1. Instead, the regulation provides that "[i]f a court . . . remands a case for further administrative proceedings after the applicable date of this SSR, [that court] will apply this SSR to the entire period at issue in the decision we make after the court's remand." *Id.*

between the VE's testimony that Joseph could perform work as a marker, collator operator, or router on the one hand, and the DOT definitions for those jobs on the other. *See* Docket Item 4-1 at 23–26. And given that unresolved conflict, Joseph argues that the ALJ erred at step five. *See id.* This Court agrees with him.

The DOT describes the jobs of marker, collator operator, and router as requiring "reaching" on a "frequent" basis. *See DOT* 209.587-034, 1991 WL 671802 (Jan. 1, 2016); *id.* at 208.685-010, 1991 WL 671753 (Jan. 1, 2016); *id.* at 222.587-038, 1991 WL 672123 (Jan. 1, 2016). But the ALJ determined that Joseph could reach overhead only occasionally, not frequently.[6] Docket Item 3-1 at 375. The ALJ nevertheless concluded that Joseph could work as a marker, collator operator, or router based on the VE's testimony that those jobs are compatible with a limitation to only occasional reaching. *See id.* at 389-90.

As a matter of simple logic, that created a conflict between the DOT and the VE's testimony: How might someone who can reach only occasionally (that is, only up to one-third of the time) reach frequently (that is, from one-third to two-thirds of the time)? And as the Second Circuit has explained, "[t]estimony that a claimant with overhead reaching limitations is capable of performing a job that the [DOT] describes as requiring 'reaching[]' . . . creates at least an *apparent* conflict that triggers the Commissioner's duty to elicit an explanation that would justify crediting the testimony." *Lockwood*, 914 F.3d at 92 (emphasis in original). Under the regulations, then, that conflict had to be reconciled. *See* SSR 00-4p, 2000 WL 1898704, at *2.

[6] The DOT defines "occasionally" as "up to 1/3 of the time" and "frequently" as "from 1/3 to 2/3 of the time." *DOT* 222.587-038, 1991 WL 672123 (Jan. 1, 2016).

Indeed, at the hearing on September 14, 2022, the ALJ appeared to recognize the apparent conflict and asked the VE about it:

> ALJ: Has your testimony been consistent with the DOT?
>
> VE: Not inconsistent, however, it doesn't address some issues—access to bathrooms, being off task, and absences. I did provide my opinion based on my knowledge, training, and experience.
>
> ALJ: What about directional reaching such as overhead reaching?
>
> VE: Oh, yes, that, of course, also is based on my knowledge, training, and experience.

Docket Item 3-1 at 420. But the ALJ never asked how the VE's knowledge, training, and experience led him to a conclusion different than that in the DOT, and the VE never explained why those jobs required only occasional reaching and not frequent reaching as the DOT provided. *See id.* at 417–421.

As noted above, the ALJ was obligated to "elicit a reasonable explanation for the conflict before relying on the VE['s]" testimony. SSR 00-4p, 2000 WL 1898704, at *2. And the ALJ tried to do that, directing the VE to what the DOT said about reaching. Docket Item 3-1 at 420. But the VE's response—that her opinion about the reaching requirements of the jobs at issue was based on her knowledge, training, and experience—did not come close to the reasonable explanation required. *See id.; Robert A. B. v. Comm'r of Soc. Sec.*, 2024 WL 5054887, at *8 (W.D.N.Y. Dec. 10, 2024) ("[T]he [VE] was required to provide some 'explanation . . . as to whether those occupations actually require overhead reaching.'" (quoting *Lockwood*, 914 F.3d at 92)); *Kristy H. v. Comm'r of Soc. Sec.*, 2024 WL 3495807, at *5 (W.D.N.Y. July 22, 2024) ("Nor was the VE's explanation that he relied on his professional experience sufficient to resolve the conflict; a VE's response must specifically address the conflict between the

DOT and his or her opinion on the jobs he or she identified as being suitable for the plaintiff." (internal quotation marks omitted)); *Matthew M. v. Comm'r of Soc. Sec.*, 2022 WL 3346949, at *4 (W.D.N.Y. Aug. 12, 2022) ("The VE testimony did not provide clarity as to how the limitations on overhead reaching were not a conflict with the degree of reaching required by the job, other than to rely on his professional experience.").[7] In fact, the VE provided only the basis for her opinion, not an explanation about any discrepancy.

What is more, the ALJ failed to specifically address this conflict in his decision. Indeed, the ALJ said that the VE's "testimony is consistent with the information contained in the [DOT]," *see* Docket Item 3-1 at 390, but as noted above, that is demonstrably incorrect with respect to the issue of reaching. The ALJ also said that the VE "testified that the DOT does not address . . . directional reaching, such as overhead reaching." Docket Item 3-1 at 390. But the VE said no such thing, *see id.* at 420, and while the DOT may not explicitly address *overhead* reaching for the three occupations at issue, it most certainly addresses the reaching required by those three jobs. *See DOT* 209.587-034, 1991 WL 671802 (Jan. 1, 2016); *id.* at 208.685-010, 1991 WL 671753 (Jan. 1, 2016); *id.* at 222.587-038, 1991 WL 672123 (Jan. 1, 2016); *see also Lockwood*, 914 F.3d at 92. The ALJ thus neglected to "identify, explain[,] and resolve" the apparent conflict, and that was error. *See Lockwood*, 914 F.3d at 92.

---

[7] The Commissioner argues that the VE's explanation is analogous to that in *Reilly v. Comm'r of Soc. Sec.*, 2022 WL 803316 (2d Cir. Mar. 17, 2022). Docket Item 8-1 at 13. In *Reilly*, however, the VE "provided explanations that included *an analysis* based on his own expertise and labor market surveys he conducted." *Reilly*, 2022 WL 803316, at *2 (emphasis added). Here, the VE did not analyze anything. So in *Reilly*, the VE did more than simply say that his opinion was "based on [his] knowledge, training, and experience," which marked the extent of the VE's testimony here.

In sum, the ALJ failed to resolve an apparent conflict between the VE's testimony and the DOT. And while that conflict may be "susceptible to easy resolution[,] . . . it is not [the Court's] role to speculate as to how or whether that conflict might have been resolved had the Commissioner carried out [his] responsibility to probe such matters." *Id.* at 94. For that reason, the ALJ's determination at step five was not supported by substantial evidence, and remand is required. *See Roderick R. v. Comm'r of Soc. Sec.*, 2023 WL 3642035, at *7 (W.D.N.Y. May 25, 2023).[8]

## CONCLUSION

The Commissioner's motion for judgment on the pleadings, Docket Item 8, is DENIED, and Joseph's motion for judgment on the pleadings, Docket Item 4, is GRANTED in part and DENIED in part. The decision of the Commissioner is VACATED, and the matter is REMANDED for further administrative proceedings consistent with this decision.

SO ORDERED.

Dated: February 23, 2026
Buffalo, New York

***/s/ Lawrence J. Vilardo***
LAWRENCE J. VILARDO
UNITED STATES DISTRICT JUDGE

[8] The Court "will not reach the remaining issues raised by [Joseph] because they may be affected by the ALJ's treatment of this case on remand." *Watkins v. Barnhart*, 350 F.3d 1297, 1299 (10th Cir. 2003); *see Beers v. Comm'r of Soc. Sec.*, 449 F. Supp. 3d 96, 103–04 (W.D.N.Y. 2020).